PROB 12
(02/05-D/CO)

UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLORADO

U. S. A. vs. ROCKY MOUNTAIN INSTRUMENT COMPANY          Docket Number: 10-cr-00139-WYD-01

**Petition for Issuance of a Summons for a Compliance Review Hearing**

      COMES NOW, Edwin Colunga, probation officer of the Court, presenting an official report upon the conduct and attitude of Rocky Mountain Instrument Company, a company that was placed on supervision by the Honorable Wiley Y. Daniel sitting in the court at Denver, Colorado on the 22nd day of June, 2010, who fixed the period of supervision at five (5) years, and imposed the general terms and conditions theretofore adopted by the court and also imposed special conditions and terms as follows:

1)     Rocky Mountain Instrument Company shall develop and submit to the Court an effective compliance and ethics program, including a schedule for implementation of that program.  The submission shall fully capture the essence of the details of the program that has been implemented internally by the company and shall provide milestones that will assist the probation office in understanding how the program is going to work, how it has already worked, and what will be some demonstrated outcomes as a result of the program's continuation.

2)     Rocky Mountain Instrument Company shall make quarterly reports to the probation office regarding its progress in implementing the compliance and ethics program.  The reports shall disclose any criminal prosecution, civil litigation, or administrative proceeding commenced against Rocky Mountain Instrument Company, or any investigation or formal inquiry by governmental authorities of which the organization learned since its last report.

RESPECTFULLY PRESENTING PETITION FOR ACTION OF COURT FOR CAUSE AS FOLLOWS:

See attachment hereto and herein incorporated by reference.

PRAYING THAT THE COURT WILL ORDER the issuance of a summons for the defendant organization to appear at a compliance review hearing.

        ORDER OF THE COURT

| | |
|---|---|
| Considered and ordered this <u>21st</u> day of March, 2014, and ordered filed and made a part of the record in the above case. | I declare under penalty of perjury that the foregoing is true and correct. |
| | *s/Edwin Colunga* |
| | Edwin Colunga |
| | Senior U.S. Probation Officer |
| /s/ Wiley Y. Daniel | |
| Wiley Y. Daniel | Place:  Denver, Colorado |
| Senior U.S. District Judge | Date:   March 10, 2014 |

**ATTACHMENT**

On September 14, 2010, the terms and conditions of probation were reviewed with the defendant organization's assigned designee. On September 14, 2010, the assigned designee acknowledged in writing that the conditions had been read to them, that they fully understood the conditions, and that they were provided a copy of them. The term of probation commenced on June 22, 2010.

On June 22, 2010, the Court ordered at sentencing that the money judgment forfeiture of $1,000,000 be paid in 18 month quarterly payments of no less than $55,555.56 per payment. The first payment was ordered due in January 2011, with the remaining payments due by the 30th of the following month. If the defendant organization anticipated that it could not fulfill a quarterly payment due to it's financial condition, it would notify the probation officer 30 days in advance of the payment due date, and provide the probation officer with verification of why any payment could not be fulfilled and a proposed plan for satisfying the missed quarterly payment. Any of the unfulfilled payments are to be approved by the probation officer. The entire $1,000,000 money judgment forfeiture was ordered to be satisfied in full, prior to the expiration of the probation term.

On September 18, 2012, the Court concurred with the Rocky Mountain Instrument Company's (RMI) proposed plan of placing a company asset in the market for sale, to liquidate an asset and free up company funds to make the quarterly payment obligations. However, in December 2012, the Japanese buyer of the proposed asset could not agree with the sale terms, and the asset was not sold.

On February 26, 2013, I met with Vice President Steve Hahn to discuss RMI's ongoing inability to make the quarterly payment of $55,555.56. As per Mr. Hahn, the company that proposed to buy the asset from RMI continued to "low-ball" the selling price and the financial support of selling the asset diminished.

On September 25, 2013, Compliance Officer Tom Cappeletti contacted me to request an overall positive compliance letter from the Probation Office as RMI was seeking to enter a new market with government contractors, with the goal of becoming a more capital productive entity with funds to pay towards the money judgment forfeiture. I informed Mr. Cappeletti that RMI was not in compliance with the payment terms of the money forfeiture, and that any letter from the Probation Office would clearly reflect RMI's noncompliance to the payment schedule, regardless if the judgment indicated that, "the entire $1,000,000 money judgment forfeiture was ordered to be satisfied in full, prior to the expiration of the probation term."

On November 12, 2013, I met with CEO Steve Hahn and Tom Cappeletti at my office to further discuss RMI's ongoing inability to meet the quarterly payment obligation due to RMI's limited/restricted market that was one of the results of this offense and conviction. Also present at this meeting was Assistant U.S. Attorney (AUSA) Matthew Kirsch. RMI's intent at the meeting was to find a best approach to secure a positive compliance letter from the Probation Office. With a positive compliance letter, RMI would then be in a better position to possibly secure the Department of State's approval in lifting the disbarment that was imposed due to the instant offense. By lifting the disbarment, RMI proposed that they could expand their operations outside of the United States, and be able to secure capital to pay towards the imposed money judgment forfeiture. AUSA Kirsch and I were both in agreement, that RMI was not meeting the minimum standard of compliance, due to RMI's lack in quarterly payments, as set forth in the judgment. Prior to this meeting, I verified with Department of State Officer, Glenn Smith, that RMI, remains debarred with the Department. Re-instatement of export privileges under

International Traffic in Arms Regulations (ITAR) is not automatic. Debarment is permanent, unless RMI makes a formal appeal to the Department and can demonstrate that they have an effective licensing and compliance program in place and can convince the Department that re-instatement would be in the best interest of U.S. foreign policy and national security.  In deciding if re-instatement is advisable, the Department would seek confirmation from law enforcement and the department of justice.

At the conclusion of our meeting, Mr. Hahn and Mr. Cappeletti agreed that they would come up with a second proposed plan to best address RMI's arrearages and how RMI could meet future payment obligations with the goal of having the entire money judgment forfeiture satisfied prior to the termination of the probation term, June 21, 2015.

On December 31, 2013, RMI submitted a letter to the Probation Office, in response to our meeting in November 2013.  RMI stated in the proposal letter that:

> [A]fter conducting a thorough review of RMI's short-term and medium term budgets and operational forecasts, we would like to propose the following plan for the outstanding DOJ penalty.  The plan is comprised of two separate components.
>
> The first component is a $10,000 monthly payment from the company operations beginning April 1, 2014 (Q2).  This payment will increase to $20,000 on July 1, 2014, and continue for six months through the remainder of 2014.  This payment would increase again to $50,000 monthly beginning in January 1, 2015, through May 1, 2015.  This would then bring the combined total of monthly payments to $400,000 over a period of 18 months, leaving a balance due of approximately $408,000 (based on today's outstanding balance of $808,000 for the penalty).
>
> The second component will come in the form of a balloon payment on June 1, 2015, to settle the remaining balance of approximately $408,000.  Sources for the lump sum payment will not come from the company's operational cash flow but instead from outside funding sources, including but not limited to, a) private borrowing by the Hahn family; b) U.S. private equity investment into RMI; c) strategic investment or lending from the Hahn's Family newly formed IR optics business in conjunction with RMI.
>
> The June 1 deadline for the balloon payment is designed to fully repay the remaining obligation within the 5 year probationary period; however, the payment could occur sooner upon closing of one of the above mentioned outside financing events.  RMI will keep the Office of Probation informed with monthly reports (due at the beginning of each month) regarding the process and outcomes of these various financing activities.

AUSA Kirsch and myself both agree that since RMI is proposing new terms to the current payment obligations that have been ordered in the judgment, that a hearing before the Court would be best suited so that all parties would have the opportunity to address any issues that may become apparent before any modifications are ordered.  On March 3, 2014, I confirmed with Mr. Capelletti, that RMI would have counsel available for a compliance review hearing.